# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  17-cv-1214 |
| ) | |
| PIZZA BY MARCHELLONI, ESTATE OF ) | Honorable Judge Joe B. McDade |
| JOSE PADILLA and ESTATE OF LYNSE ) | |
| STOKES, deceased, by SHANA KRIDNER, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ESTATE OF LYNSE STOKES, deceased, by ) | |
| SHANA KRIDNER, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PIZZA BY MARCHELLONI, MID-CENTURY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Counter-Defendants. ) | |
| ) | |
| ESTATE OF LYNSE STOKES, deceased, by ) | |
| SHANA KRIDNER, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AUSTIN HOUGH, ) | |
| ) | |
| Third-Party Defendant. ) | |

## **ORDER & OPINION**

This matter is before the Court on "Mid-Century Insurance Company's, Improperly Named As 'Farmers Insurance,' Motion To Dismiss Estate Of Lynse Stokes' Amended Counterclaim"

(Doc. 33). For the reasons given below, the motion is GRANTED. The Amended Counterclaims (Doc. 31) are dismissed.

## BACKGROUND

This case arises out of a tragic car accident that occurred on or about September 4, 2016. Jose Padilla ("Padilla") was driving an automobile northbound on Livingston County Road 1900 East in Livingston County, Illinois. At that time, Padilla was delivering pizza for Pizza by Marchelloni ("Marchelloni"). Lynse Stokes was a passenger in the vehicle being driven by Padilla. At some point, Padilla attempted to turn left onto Illinois Route 116, but in doing so, drove into the path of Leah Metz's vehicle, which was travelling eastbound on Route 116. A collision occurred between the vehicles that resulted in the deaths of Stokes and Padilla.

The Estate of Stokes, maintained by Shana Kridner, brought a state civil action in the Circuit Court of the Eleventh Judicial Circuit of Illinois in Livingston County against the Estate of Padilla and Marchelloni alleging Wrongful Death against both defendants and survival counts for the pain and suffering of Lynse Stokes prior to her death. (Doc. 3-2).

Plaintiff, Mid-Century Insurance Company ("Mid-Century"), is a California insurance company that extended an insurance policy to Marchelloni and Dale Stokes, which was in effect at the time of the collision. The policy had a businessowners' liability coverage provision that stated:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

(Doc. 3 at 4, Doc. 3-1 at 96). However, the policy went on to list specific exclusions:

> B. Exclusions
> 1. Applicable To Business Liability Coverage
> This insurance does not apply to:
> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
>> g. Aircraft, Auto Or Watercraft
>>> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

(Doc. 3-1 at 98, 100).

Mid-Century claims it has no duty to defend or indemnify Marchelloni or the Estate of Padilla in any suit seeking damages for bodily injury to which the policy does not apply, and that the underlying lawsuit here is such a suit that is not covered by the policy due to the exclusion clause referred to above. (Doc. 3 at ¶¶21-27). Mid-Century specifically requests that this Court find no coverage is available under the Mid-Century policy at issue for the Estate of Padilla or Marchelloni and that Mid-Century has no duty to defend or indemnify the Estate of Padilla or Marchelloni for the Underlying Lawsuit.

After answering the Complaint, the Estate of Stokes brought counterclaims against Marchelloni and Farmers Insurance, insinuating that Mid-Century and Farmers are the same company.[1] The Estate of Stokes has also brought a third-party complaint (Doc. 27-1) against Austin Hough, an insurance agent of either Farmers or Mid-Century, as the case may be. The Estate of Stokes's first counterclaim is under a theory of negligence against the insurer via respondeat superior liability as the principal of its captive insurance agent. The second

---

[1] Mid-Century characterizes Estate of Stokes's inclusion of Farmers Insurance as a mistake. The Local Rule 11.3 Certificate of Interest shows that Farmers Insurance Exchange is the majority owner of Mid-Century. The policy at issue itself is replete with many references to Farmers Insurance while Mid-Century Insurance appears on only a few pages. Since the Estate of Stokes has not commented on whether mentioning Farmers Insurance is a mistake but continually refers to the "Plaintiff" throughout its response to Mid-Century's motion, the Court will refer to Mid-Century Insurance alone, and disregard references to Farmers Insurance.

counterclaim is under a theory of negligence against the insurer via direct liability. Both claims are premised on the proposition that Mid-Century was negligent in failing to provide Marchelloni with appropriate liability insurance to cover parties injured by the tortious acts of its insured.

Mid-Century argues that these claims fail as a matter of law because the Estate of Stokes has failed to plead facts from which one can reasonably conclude that Mid-Century owed any duty of care to Lynse Stokes. Mid-Century is correct that under Illinois law, a claim for negligence must show the following elements: "the existence of a duty, breach of the duty, and injury to the plaintiff proximately caused by the breach." *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 532 (Ill. App. Ct. 2d Dist. 1993).

The Estate of Stokes contends that the motion to dismiss the Counterclaims should be denied for three reasons. First, the Estate argues that because it was included as a necessary party to this insurance coverage action, it has standing to participate in this lawsuit. Second, the Estate argues that Marchelloni is not capable of protecting or asserting the Estate's rights against Mid-Century. Lastly, the Estate contends that Lynse Stokes was an intended beneficiary of the insurance contract between Marchelloni and the insurer and thus the Estate has the right to bring the Counterclaims.

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the challenged pleading must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant]

has a right to relief, raising that possibility above a 'speculative level.' " *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955. Conclusory statements and labels are insufficient; enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). Lastly, when a plaintiff pleads facts demonstrating that he has no claim, dismissal of the complaint, in this case counterclaims, is proper. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## DISCUSSION

The Estate of Stokes's first argument is that because the Estate has standing to participate in this insurance coverage action, the allegations of its negligence counterclaims suffice to survive Rule 12(b)(6) scrutiny. Standing does not translate to the existence of a duty though. Standing to participate in the adjudication of one civil claim has nothing to do with whether one can satisfy the legal elements of a different claim. The Estate is correct that Illinois courts regard an underlying tort claimant as a necessary party to an insurance coverage dispute wherein an insurance company attempts to have a court declare its duties and rights pursuant to an insurance contract that purportedly covers the damages caused by the insurance company's insured's tort. *See*, *e.g.*, *Am. Country Ins. Co. v. Williams*, 791 N.E.2d 1268, 1272–73 (Ill. App. Ct. 1st Dist. 2003). However, having standing to defend a declaratory insurance coverage claim does not alleviate one from

5

having to establish the elements of a different claim that is separate and distinct from the underlying scope of the coverage claim.

Here, the Estate of Stokes claims Marchelloni and the Estate of Padilla are liable to it because they caused Lynse Stokes's wrongful death and pain and suffering. Mid-Century claims it has no duty to defend or indemnify Marchelloni or the Estate of Padilla in that tort action under the insurance policy between it and Marchelloni because the policy specifically excluded bodily injury and property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. (*See* Doc. 3-1 at 100). Of course, the Estate of Stokes has a real and concrete interest in whether the insurance policy requires indemnification for Marchelloni's ultimate liability to the Estate of Stokes. However that interest is separate and distinct from what the Estate of Stokes is alleging in its Amended Counterclaims in this action.

In the Counterclaims, the Estate of Stokes is attempting to hedge the risk of the Court finding Mid-Century has no duty to indemnify Marchelloni or the Estate of Padilla under the policy by alleging that in the event it is found that there is no coverage based on Mid-Century's Amended Complaint, Marchelloni attempted to procure an insurance policy with suitable insurance coverage according to its wishes, requirements, needs and directives, but failed to do so because of Mid-Century and so Mid-Century, due to its (or its agent's) negligence in failing to procure appropriate insurance, should be responsible for any loss not covered by the actual policy that was in place. That is a separate and distinct negligence claim alleging a failure to procure adequate insurance and it has nothing to do with Mid-Century's claim as to whether the policy that was actually in place covers Marchelloni or the Estate of Padilla for their alleged torts.

Illinois law is clear that to maintain a negligence claim one must be able to point to a duty on the part of the defendant owed to the plaintiff. *Nielsen*, 612 N.E.2d at 532. This requirement is separate and distinct from the issue of standing and the Estate of Stokes has not provided—nor could this Court locate—a single authority for the proposition that one can simply ignore an element of a negligence claim against an insurer.

The Estate of Stokes's second contention fails for the same reason. One simply cannot ignore an element of a legal claim. Marchelloni's and the Estate of Padilla's alleged incapability to protect or assert the Estate of Stokes's rights against Mid-Century is of no consequence to the analysis of whether the elements the Estate of Stokes's negligence counterclaims are present and adequately pled. If Marchelloni really felt Mid-Century was negligent in procuring adequate insurance for itself against third party tort claims then Marchelloni, and apparently any assignee of Marchelloni's claim against Mid-Century, could presumably bring such a negligence claim on its own behalf. Unfortunately for the Estate of Stokes, there is no allegation pled in the Amended Counterclaims showing Marchelloni has assigned any possible claim it has against Mid-Century to the Estate of Stokes.

The Estate of Stokes's final contention is that Lynse Stokes was an intended beneficiary of the insurance contract between Pizza by Marchelloni and the insurer and thus the Estate has the right to bring the Counterclaims. The term "intended beneficiary" has legal significance. "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them. For an intended third-party beneficiary to enforce contract terms, the liability of a promisor to the beneficiary must affirmatively appear from the language of the instrument, and the contract must be made for the direct benefit of the

third party. It is not necessary that the beneficiary be identified by name in the contract, but it must be identified in some manner, for example, by describing the class to which it belongs." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (internal citations and quotation marks omitted). "In Illinois, an individual not a party to a contract may only enforce the contract's rights when that contract's original parties intentionally enter into the contract for the direct benefit of the individual. . . . The promisor's intention must be shown by an express provision in the contract identifying the third party beneficiary." *Cahill v. E. Ben. Sys., Inc.*, 603 N.E.2d 788, 791–92 (Ill. App. Ct. 1st Dist. 1992) (internal citations and quotation marks omitted). For these reasons, the Estate attempts to cast Lynse Stokes as an intended beneficiary of the Mid-Century policy.

Unfortunately, the Estate merely offers a bald assertion that Lynse Stokes was an intended beneficiary of the insurance contract between Marchelloni and Mid-Century. Bald assertions are insufficient to plead viable claims; enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander,* 721 F.3d at 422. The Estate has not pointed to any provision in the Mid-Century policy where Lynse Stokes was either specifically named or otherwise identified in some other manner as an intended beneficiary of the policy. And although the Court has not made final declaration on the matter, victims of auto crashes could hardly be taken to be an implicit intended category of beneficiaries for an insurance policy that has a specific exclusion of coverage for bodily injury and property damage arising out of the use of an automobile. (*See* Doc. 3-1 at 100).

The Estate maintains that once the accident that killed Lynse Stokes occurred, the Estate of Stokes became the real party in interest to the insurance policy. That is specious logic. The law requires that the intended beneficiary be *intended by the parties to the contract* to receive a benefit

for the performance of the agreement. Such intention is discerned by looking to the language of the insurance contract; it cannot be gleaned by events subsequent to the contract's formation.

In conclusion, the Estate of Stokes's Amended Counterclaims against Mid-Century fail because they do not allege facts from which one can conclude Mid-Century owed any duty of care or breached a duty of care owed to Lynse Stokes.

## CONCLUSION

For the reasons stated above, "Mid-Century Insurance Company's, Improperly Named As 'Farmers Insurance,' Motion To Dismiss Estate Of Lynse Stokes' Amended Counterclaim" (Doc. 33) is GRANTED. The Amended Counterclaims found in Document 31 are DISMISSED for failure to state claims upon which relief can be granted.

SO ORDERED.

Entered this 12th day of January, 2018.

                                                              s/ Joe B. McDade
                                                              JOE BILLY McDADE
                                              United States Senior District Judge