UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> PIZZA BY MARCHELLONI, ESTATE OF JOSE PADILLA and ESTATE OF LYNSE STOKES, deceased, by SHANA KRIDNER, <br><br> Defendants. | Case No. 17-cv-1214 <br><br> Honorable Judge Joe B. McDade |

## ORDER & OPINION

This matter is before the Court on competing motions for judgment on the pleadings filed by Plaintiff Mid-Century Insurance Company (hereinafter "Mid-Century") and Defendant Estate of Lynse Stokes, deceased, by Shana Kridner (hereinafter "Estate of Stokes"). For the reasons discussed below, "Mid-Century Insurance Company's Motion For Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(C)" (Doc. 45) is GRANTED and the "Estate Of Stokes' Motion For Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(C)" is DENIED.

**LEGAL STANDARDS**

A party may move for judgment on the pleadings after "the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. Pro. 12(c). Rule 12(c) motions are generally governed by the same standard as motions to dismiss for failure to state

a claim under Rule 12(b)(6). *Lodholtz v. York Risk Srvs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015). Therefore, "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.,* 589 F.3d 901, 904 (7th Cir. 2009). However, where the movant attempts "to dispose of the case on the basis of the underlying substantive merits," the more appropriate standard of adjudication is that of a motion for summary judgment.[1] *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) (citing *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). Thus, judgment on the pleadings is only appropriate when there are no disputed issues of material fact and it is clear that the moving party… is entitled to judgment as a matter of law. *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) citing *Karaganis*, 811 F.2d at 358. The district court is confined to the matters presented in the pleadings. 862 F.3d at 595. However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (adjudicating a motion for judgment on the pleadings by utilizing motion to dismiss standards).

## BACKGROUND

This case arose out of a car accident that occurred on September 4, 2016. Jose Padilla ("Padilla") was driving an automobile northbound on Livingston County Road

---

[1] On April 17, 2018, the Court converted the motions for judgment on the pleadings to motions for summary judgment because it was considering documentary evidence outside the pleadings in rendering this Order & Opinion.

2

1900 East in Livingston County, Illinois. At that time, Padilla was delivering a pizza for Pizza by Marchelloni[2]. Lynse Stokes was a passenger in the vehicle being driven by Padilla. A collision occurred that resulted in the deaths of both Stokes and Padilla. The Estate of Stokes, maintained by Shana Kridner, brought a state civil action in the Circuit Court of the Eleventh Judicial Circuit of Illinois in Livingston County against the Estate of Padilla and S.L.D., INC., doing business as Pizza by Marchelloni, alleging wrongful death against both defendants and survival counts for the pain and suffering of Lynse Stokes prior to her death. (Doc. 57-1).

Mid-Century extended an insurance policy to Dale Stokes, which was in effect at the time of the collision. The policy has a businessowners' liability coverage provision that states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

(Doc. 45-2 at 96). The policy goes on to list specific exclusions, amongst which was an automobile exclusion:

B. Exclusions
1. Applicable To Business Liability Coverage

---

[2] Pizza by Marchelloni is a trade name; like Dunkin Donuts or McDonald's. A recurring issue throughout this case is what distinction if any there is between "Pizza By Marchelloni" and the corporate entity that actually runs the business for which Padilla delivered pizzas. As will be discussed later, the Court finds that there is a significant and concrete distinction between "Pizza By Marchelloni" and S.L.D., Inc., the corporate entity, for the purposes of discerning who is an insured under the policy despite that the two entities may be deemed the same colloquially.

3

This insurance does not apply to:
> g. Aircraft, Auto Or Watercraft
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

(Doc. 45-2 at 98, 100).

Based on the exclusion above, Mid-Century claims it has no duty to defend or indemnify Pizza by Marchelloni or the Estate of Padilla in any suit seeking damages for bodily injury to which the policy does not apply. (Doc. 3 at ¶¶21-27). Mid-Century requests that this Court find no coverage is available under the Mid-Century policy at issue for the Estate of Padilla or Pizza by Marchelloni and that Mid-Century has no duty to defend or indemnify the Estate of Padilla or Pizza by Marchelloni for the underlying lawsuit. Conversely, the Estate of Stokes asks this Court to find that Mid-Century owes Pizza by Marchelloni coverage under the policy, which means in practical terms that Mid-Century has a duty to indemnify Pizza by Marchelloni for any judgment amount the Estate of Stokes secures in the underlying lawsuit.

Pizza by Marchelloni and the Estate of Padilla admitted that Pizza by Marchelloni and Padilla were "insureds" as defined by the policy in their Answers to the Amended Complaint. (Doc. 24 and 18). The Estate of Stokes did not expressly admit or deny the assertion that Pizza by Marchelloni or Padilla were "insureds" as defined by the policy; instead it answered the assertion was a legal conclusion that needed no response. (Doc. 27 at 6). Both the Estate of Stokes and Pizza by Marchelloni now contend in their responses to Mid-Century's motion for judgment on the

4

pleadings that the Mid-Century policy was issued to Pizza by Marchelloni's owners, Dale and Leticia Stokes, individually, not to S.L.D., Inc., which was the legal entity that allegedly employed Padilla. (*See* Docs. 54 at 1-2, 52 at 1-2, 51 at 1-2). Consequently, they contend that Padilla is not an "insured" under the policy to which the Auto-Exclusion provision of the policy applies, yet was an agent of the business such that his tort, which arose out of the business, should be attributed to Pizza by Marchelloni.

## DISCUSSION

In Illinois, the law holds that "if an insurer owes no duty to defend, it owes no duty to indemnify." *Metzger v. Country Mut. Ins. Co.*, 2013 IL App (2d Dist.) 120133, ¶ 19, 986 N.E.2d 756, 761; *see also Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1184 (7th Cir. 1980) ("If the broader duty to defend has not been triggered, it is because the underlying action is not potentially within the coverage of the policy, and there could be, as a practical matter, no duty to indemnify in such a situation."). Therefore, the Court will begin its analysis with ascertaining whether the Mid-Century policy requires Plaintiff to defend Defendants Estate of Padilla and S.L.D., Inc. doing business as Pizza by Marchelloni, in the underlying lawsuit.

Courts compare the allegations in an underlying complaint with the coverage provisions of the insurance policy at issue in order to determine whether an insurer owes a duty to defend. *St. Paul Fire and Marine Ins. Co. v. Village of Franklin Park,* 523 F.3d 754, 756 (7th Cir. 2008); *Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 7 (Ill. 2003). The interpretation of an insurance policy is a question of law that can be disposed of without a trial. *See Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d

5

714, 719 (7th Cir. 2006) ("In Illinois, the interpretation of an insurance policy is a question of law. *See, e.g., Zurich Ins. Co. v. Walsh Constr. Co. of Ill., Inc.,* 816 N.E.2d 801, 805 (2004)").

> An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies. Accordingly, our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. Although "creative possibilities" may be suggested, only reasonable interpretations will be considered. Thus, we will not strain to find an ambiguity where none exists. Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous.

*Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005) (citations omitted).

Here, the underlying complaint alleges that "Defendant Jose Padilla, was driving a 1997 Nissan 200SX for Pizza By Marchelloni" and that "Lynse Stokes was a passenger in the vehicle." (Doc. 57-1 at 1-2). It alleged further that Padilla was in the process of delivering a pizza for Pizza by Marchelloni when he caused a collision that resulted in Lynse Stokes suffering pain and dying. The underlying complaint states

> 9. At the time of the collision, the Defendant JOSE PADILLA was an employee of S.L.D. Inc.
>
> 10. At the time of the collision, Defendant JOSE PADILLA was in the process of completing a pizza delivery for S.L.D., Inc.
>
> 11. At the time of said occurrence, Defendant JOSE PADILLA was acting within the course and scope of his employment with S.L.D., Inc.

6

(Doc. 57-1 at 2). The underlying complaint seeks relief for Lynse Stokes's wrongful death and pain and suffering against the Estate of Padilla and S.L.D., Inc. doing business as Pizza by Marchelloni. (Doc. 57-1 at 5). The underlying complaint also alleges counts against S.L.D., Inc. directly.

> As explained above, the Mid-Century policy states:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, <u>we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.</u>

(Doc. 45-2 at 96(emphasis added)). The policy specifically excludes bodily injury or property damage arising out of the use of automobiles by the insured:

> B. Exclusions
> 1. Applicable To Business Liability Coverage
> This insurance does not apply to:
> ***
> g. Aircraft, Auto Or Watercraft
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned <u>to any insured</u>. Use includes operation and "loading or unloading".

(Doc. 45-2 at 98, 100 (emphasis added)). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time". (Doc. 45-2 at 107). "Insured" means "any person or organization qualifying as such under Section C - Who Is An Insured" (Doc. 45-2 at 96) and includes the Named Insured and any employees of the Named Insured. (Doc. 45-2 at 104). Padilla is alleged to have committed torts against Lynse Stokes while driving an

7

automobile while working for Pizza by Marchelloni. So at first blush, this seems to be a straightforward case. But alas, litigation is rarely straightforward.

The Common Policy Declarations section of the policy lists "Dale Stokes Pizza by Marchelloni" as the Named Insured and under Form of Business, the box for individual is checked. (Doc. 45-2 at 11). There are boxes for corporations and other entities under Form of Business but only the box next to individual is marked. Obviously, Pizza by Marchelloni is not an "individual"; it is the name of a pizza franchise.[3] The term "individual" is not defined in the policy. However, in various places in the Illinois Insurance Code, the term "individual" is defined as a natural person or used interchangeably with a natural person. *See*, *e.g.*, 215 Ill. Comp. Stat. Ann. §§ 5/1003(J), 5/1510; *see also*, 215 Ill. Comp. Stat. Ann. §§ 5/143.13, 5/1009(4)(F). Also, the term "insured" means "any person or organization qualifying as such under Section C - Who Is An Insured" (Doc. 45-2 at 96). Given the foregoing, the Court finds that the policy was intended to cover Dale Stokes doing business as a Pizza By Marchelloni franchisee.

If the Named Insured is designated as an individual in the Declarations section of the policy, then the policy further defines "insureds" as the individual and the individual's spouse. (Doc. 45-2 at 104). Thus, the Court finds that Dale Stokes and his spouse, Letitia Stokes, were insureds under the policy.

---

[3] The Articles of Incorporation for S.L.D., Inc. attached to Marchelloni's response to Mid-Century's motion for judgment on the pleadings provide that the purpose of the corporation was "[t]o act as a Pizzas By Marchelloni franchisee as licensed under a [sic] Franchise Agreement dated April 30, 1996." (Doc. 54-1 at 2). Thus, the Court finds that Pizza By Marchelloni is nothing more than a franchise name.

Mid-Century asserts that Padilla was also an insured under the policy because he was an employee of Pizza by Marchelloni. (Doc. 45 at 8-10). Both the Estate of Padilla and Pizza by Marchelloni admitted in their Answers that Padilla was an insured under the policy. (Doc. 17 at ¶ 20; Doc. 24 at ¶ 20). And the Estate of Stokes failed to admit or deny the same (Doc. 27 at 6), which sometimes has the effect of being a tacit admission. Regardless of whether the assertion that one is an insured under a policy is a legal conclusion, the Court finds that it should still examine whether Padilla was actually an insured under the policy because a litigant can admit a factual assertion but such admission does not make the assertion necessarily true; it simply means the litigant loses the ability to contest the assertion. A litigant could admit the Earth is flat. Obviously, science has proven that such an admission would not be true. Therefore, despite these admissions, the Court will still examine whether Padilla was an actual insured under the policy.

Defendant Pizza by Marchelloni has provided evidence that the business franchisee itself actually operated as S.L.D., Inc., an entity incorporated under the laws of Illinois with Dale and Letitia Stokes as the sole stockholders. (*See* Doc. 18, Marchelloni's Answer to the Amended Complaint, *see also* Doc. 54-1). Defendants also claim Padilla was an actual employee of S.L.D., Inc., not of Dale Stokes and his spouse, Letitia Stokes. There is no doubt that the policy provides that ordinary employees of an insured are also insured. (Doc. 45-2 at 104).

But let us assume that Defendants are correct and Padilla was not an employee of Dale or Letitia Stokes legally, but rather an employee of S.L.D., Inc., such that he was not an "insured" under the policy. The Court is hard pressed to understand how

that would help the Defendants convince the Court that the underlying lawsuit is covered by the policy. If Padilla was an employee of S.L.D., Inc.—an entity that is not an insured under the policy—then based upon the pleadings, Mid-Century's duty to defend or indemnify would not even be implicated in the underlying lawsuit.

Defendants disagree. They advance one of the most serpentine theories of insurance coverage this Court has ever encountered. Defendants argue that Padilla was an employee of S.L.D., Inc. and not an employee of Dale or Letitia Stokes, and thus <u>not</u> an insured under the policy that was issued to Dales Stokes for purposes of the auto-exclusion provision of the policy <u>only</u>. The Estate of Stokes argues further that the Mid-Century policy nevertheless extends coverage to the Estate of Padilla and Pizza by Marchelloni in the underlying lawsuit because Padilla was acting within the scope of his employment for S.L.D., Inc. when the events giving rise to the suit occurred, and that entity is wholly owned by Dale and Letitia Stokes to carry out their business as a Pizza by Marchelloni franchisee. It is worth taking a look at the exact argument advanced by the Estate of Stokes in its submission to the Court:

> Padilla was working in furtherance of the Stokes' business interests. Padilla was acting in the scope of his employment with S.L.D., Inc., a business that the named insureds, Dale and Leticia Stokes, alone owned. According to the policy, see Exhibit 2 attached to Filed Document 45, pg. 96, section A(1)(b): "This insurance applies (2) to (a) "personal injury" caused by an offense arising out of your business…". It goes on to define the businesses that the policy may apply to as "a business of which you are the sole owner." See Exhibit 2 attached to Filed Document 45, pg. 104, section C(1). Thus, because the underlying accident arose out of his employment with S.L.D., Inc., the business owned solely by Dale and Leticia Stokes, the coverage for the accident still applies, even if Jose is not himself an insured under the policy. Confusing as this may be, by not taking the time to write the policy correctly and instead writing it Dale and Leticia Stokes as individuals with a business, Plaintiff over insured Dale and Leticia Stokes. Instead of writing them

> a strictly business policy for S.L.D., Inc., they wrote a policy that covered both Dale and Leticia Stokes personally as well as any actions taken on behalf of any business of which they were the sole owners for any acts (regardless of who performed them) done in connection with that business which might have caused an injury. This includes any acts taken by or on behalf of S.L.D., Inc., and any actions taken by S.L.D.'s employee, Jose Padilla. Thus, the coverage still applies and so the Estate of Stokes is entitled to judgment on the pleadings in favor of the existence of coverage.

(Doc. 52 at 1-2).

There are two reasons why the Estate of Stokes's argument is without merit. First, it is based upon a faulty premise. The Estate maintains that according to the policy the insurance applies to "personal injury" caused by an "offense arising out of your business…" to "which you are the sole owner." (Doc. 45-2 at 96). Mid-Century correctly points out that coverage available under the policy is unambiguously separated and distinguished between coverage of damages due to "bodily injury" and coverage of damages due to "personal injury" and that the injury complained of in the underlying complaint is one of "bodily injury" under the policy.

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time". (Doc. 45-2 at 107). The insurance applies to "bodily injury" that is caused by an "occurrence" that takes place in the "coverage territory" during the policy period. (Section A.1.b.(1) of the policy at page 96 of Document 45-2). "Personal injury" is defined as

> "injury, <u>other than</u> '<u>bodily injury</u>', arising out of one or more of the following specific offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor; d. Oral or written publication of material that slanders or libels

11

a person or organization or disparages a person's or organization's goods, products or services; or e. Oral or written publication of material."

(Doc. 45-2 at 108-109). The insurance specifically applies to "personal injury" when such injury is caused by an offense <u>arising out of your business</u>. (Section A.1.b.(2) of the policy at page 96 of Document 45-2).

The allegations in the underlying complaint are that Lynse Stokes died as result of Padilla's and/or S.L.D., Inc.'s actions, which correlates to "bodily injury" as defined by the policy <u>not</u> "personal injury" as that term is defined in the policy. Furthermore, the phrase "arising out of your business" that appears in Section A.1.b.(2) of the policy only pertains to "personal injury" not "bodily injury". (*See* Doc. 45-2 at 96). Thus, one should not even inquire into whether Padilla's tort (or S.L.D., Inc.'s tort) against Lynse Stokes "arose out of a business" of Dale and Letitia Stokes when comparing the allegations in the underlying complaint with the coverage provisions of the insurance policy at issue.

The second problem with the Estate's argument is that it ignores Illinois corporate law. The Estate of Stokes argues that the Mid-Century policy "covered both Dale and Leticia Stokes personally as well as any actions taken on behalf of any business of which they were the sole owners for any acts (regardless of who performed them) done in connection with that business which might have caused an injury. This includes any acts taken by or on behalf of S.L.D., Inc., and any actions taken by S.L.D.'s employee, Jose Padilla." (Doc. 52 at 2). Implicit within that argument is the assertion that a policy purchased by an insured that purports to cover him as an

individual with respect to the conduct of a business of which he is the sole owner,[4] will also cover a corporation not named in the policy that actually carries out the individual's business. Surprisingly, the parties have not provided any legal authority on this issue. Perhaps the reason no one briefed this issue is because there appears to be extremely little case law on it. Nevertheless, at least one court has addressed this question squarely.

In *Shelby Ins. Co. v. Ford*, 454 S.E.2d 464 (Ga. 1995), Georgia's Supreme Court held that under Georgia law, an insurance policy issued to an individual that covered her individual liability "only with respect to the conduct of a business of which [she was] the sole owner" did not extend to cover a corporation for which that individual was the sole owner. *Id.* at 465-66. A woman owned a corporation that in turn owned and operated a day care. *Id.* at 465. Someone was injured on the premises of the day care and sued the corporation, which had no insurance, and the owner who did have insurance. *Id.* The insurer denied coverage on the ground that the corporation was not a named insured under the policy. *Id.* The lower Georgia court of appeals held that since the owner was the sole owner of the corporation, both she and the corporation were named insureds. *Id.* The Georgia Supreme Court reversed and held that the lower court's holding was erroneous because it rested on a misapprehension that ownership of a corporate entity that operates a business is equal to ownership of the business itself. *Ford*, 454 S.E.2d at 466. The court reviewed Georgia corporate

---

[4] For the sake of simplicity and unity of marriage, the Court assumes that "sole owner" encompasses spouses such that Dale and Letitia constitute a sole owner under the policy.

13

law and found that "a corporation is an artificial person created by law. The corporate identity is entirely separate from the identity of its officers and stockholders. A corporation and even its sole owner are two separate and distinct persons." *Id.* (citation omitted). The court held

> the fact that [the owner] owns the corporation does not change the fact that the corporate owner of the business is distinct from [the owner] as an individual. It was with [the owner], as an individual, that [the insurer] contracted to provide insurance coverage, and that contract cannot be enlarged by the court to include as a named insured a wholly distinct legal entity.

*Id.* at 465-66.

Obviously, *Ford* is a Georgia case applying Georgia law, but its logic is persuasive to this Court and has led the Court to conclude it should consult Illinois corporate law as it attempts to determine whether a policy purchased by an insured that covers him as an individual with respect to the conduct of a business of which he is the sole owner will also cover a corporation not named in the policy that actually carries out the individual's business.

The Supreme Court of Illinois has pronounced that

> "[i]t is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated. <u>Stock ownership alone in one corporation by another does not create an identity of interest between the two or create the relation of principal and agent, representative, or alter ego between the two</u>…. Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.

14

*Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981) (emphasis added). These Illinois principles of separation between a corporate entity and its sole owner sway the Court to conclude that the Mid-Century policy cannot be deemed to cover S.L.D., Inc. even though Dale and Letitia Stokes are the only shareholders of the corporate entity and the corporate entity is clearly the entity carrying out the business of being a Pizza by Marchelloni franchisee.

Now, lest the Defendants be tempted to raise some sort of corporate veil piercing argument to try to convince the Court that Padilla and S.L.D., Inc. are ultimately insureds under the policy, the Court finds that it does not really matter if they were. That is so because the auto-exclusion provision of the policy clearly applies. It provides as follows in relevant part:

> This insurance does not apply to:
> g. Aircraft, Auto Or Watercraft
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

(Doc. 45-2 at 98, 100). The Court has already determined that Lynse Stokes suffered "bodily injury" as that term is defined under the policy. Clearly, the Estate of Stokes alleges that bodily injury arose out of Padilla's use of an automobile to deliver a pizza for Pizza by Marchelloni. So even if S.L.D., Inc. were an "insured" under the policy, and Padilla in turn was insured by virtue of the his being an employee of S.L.D., Inc., the auto-exclusion provision bars coverage and establishes Mid-Century has no duty to defend the Estate of Padilla or S.L.D., Inc. in the underlying lawsuit.

15

The Estate of Stokes also argues that judgment is inappropriate because Dale and Letitia Stokes were not added to this lawsuit. Federal Rule of Civil Procedure 19 instructs that a party is necessary to an action when any of the following several conditions are met: first, the court cannot accord complete relief among existing parties in that person's absence; or second, that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may either impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest. Neither Dale nor Letitia Stokes are defendants in the underlying lawsuit, so their participation is not necessary in this lawsuit. Given that corporate entities are separate and distinct from their owners, the Stokes are not necessary to this declaratory judgment action as the sole shareholders of S.L.D., Inc. either. As for S.L.D., Inc. the entity, it is a party to the underlying lawsuit, and it is participating in this lawsuit as Pizza by Marchelloni. (*See* Doc. 18, Answer demonstrating Pizza by Marchelloni answered this lawsuit claiming to be the trade name for S.L.D., Inc.).

In conclusion, the Court does not see any way the Mid-Century policy can be construed to make Mid-Century liable to defend S.L.D. doing business as Pizza by Marchelloni or the Estate of Padilla in the underlying lawsuit brought against them for the wrongful death of Lynse Stokes arising out of Padilla's delivery of a pizza in an automobile. No further discovery or evidence would have any effect on the Court's ruling, so summary judgment in favor of Plaintiff Mid-Century and against the Defendants is appropriate.

## CONCLUSION

For the reasons stated above, "Mid-Century Insurance Company's Motion For Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(C)" (Doc. 45) is GRANTED and the "Estate Of Stokes' Motion For Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(C)" is DENIED.

IT IS THEREFORE ORDERED

1. No coverage is available under the Mid-Century Policy for S.L.D., Inc. doing business as Pizza by Marchelloni;

2. Mid-Century Insurance Company has no duty to defend S.L.D., Inc. doing business as Pizza by Marchelloni, Jose Padilla or the Estate of Jose Padilla in *Estate of Lynse Stokes, deceased, by Shana Kridner v. Estate of Jose Padilla, et. al.*, No. 2017 L 5 (Cir. Ct. Livingston County);

3. Mid-Century has no duty to indemnify S.L.D., Inc. doing business as Pizza by Marchelloni, Jose Padilla or the Estate of Jose Padilla with respect to *Estate of Lynse Stokes, deceased, by Shana Kridner v. Estate of Jose Padilla, et. al.*, No. 2017 L 5 (Cir. Ct. Livingston County).

4. Civil action terminated.

SO ORDERED.

Entered this <u>10th</u> day of May, 2018.

                                           s/ Joe B. McDade
                                           JOE BILLY McDADE
                                   United States Senior District Judge